## Cornelius B. Gold, Receiver, v. The City of Peoria.

1. MUNICIPAL INDEBTEDNESS—*In Excess of the Constitutional Limit.* —A debt created by a municipal corporation for any purpose, to an amount, including the existing indebtedness, in the aggregate exceeding five per centum of the value of the taxable property therein as shown by the previous assessment for State and county purposes, is void, as being prohibited by the constitution.

2. ORDINANCES—*Construction of.*—An ordinance which provides for the furnishing of water to a city by a private corporation, at an annual rental, payable quarterly, for the period of thirty years, must be construed as amounting to a contract for such time as the city may request water to be furnished at an annual rental, payable as specified, and that the taking of water is optional with the city.

3. MUNICIPALITIES—*Power to Create Debts.*—A municipal corporation can not exceed the constitutional limit of indebtedness under the pretext of providing for necessary protection of health and property and current expenses. It can not override the constitutional barrier, under the claim of meeting current expenses, any more than it can create a debt payable in the future.

4. SAME—*Assumption of Debts by Private Corporations.*—The assumption of a municipal debt by a water company, and its promise to pay the same, does not extinguish the debt as a liability against the city. That can be accomplished only by the holders of the debt accepting the promise of the water company to pay, and agreeing to release the municipality.

Assumpsit, for money due. Appeal from the Circuit Court of Peoria County; the Hon. THOMAS M. SHAW, Judge, presiding. Heard in this court at the December term, 1895. Affirmed. Opinion filed June 1, 1896.

STEVENS, HORTON & ABBOTT, attorneys for appellant, contended that the contract is valid if within the limit of the

power of the city to become indebted at the time it was entered into (Culbertson v. City of Fulton, 127 Ill. 35), or within the limit at the time the water was used. E. St. L. v. E. St. L. G. L. & C. Co., 98 Ill. 415.

The burden of proving the illegality of the contract was upon the city. Barnard & Co. v. Knox County, 37 Fed. 563; Linn v. Chambersburg (Pa.), 28 Atl. Rep. 842.

W. T. IRWIN, City Attorney, and WINSLOW EVANS, attorneys for appellee.

By the constitution it is provided, " No county, city, township, school district or other municipal corporation shall be allowed to become indebted in any manner or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness." Constitution of 1870, article 9, section 12.

The inhibition is against becoming indebted, that is, voluntarily incurring a legal liability to pay, in any manner or for any purpose, when a given amount of indebtedness has previously been incurred. A debt payable in the future is obviously no less a debt than if payable presently; and a debt payable upon a contingency, as, upon the happening of some event such as the rendering of a service or the delivery of property, is some kind of a debt and therefore within the prohibition. Prince v. City of Quincy, 128 Ill. 457; City of Springfield v. Edwards, 84 Ill. 632.

No matter how urgent, how useful, how unanimous the wish, there stands the existing indebtedness to a given amount in relation to the sources of payment as an impassable obstacle to the creation of any further debt in any manner or for any purpose whatever. Litchfield v. Ballou, 114 U. S. 190.

MR. JUSTICE HARKER DELIVERED THE OPINION OF THE COURT.

This was an action of assumpsit by appellant, to recover

for water furnished the city of Peoria for fire protection and other public uses, for the quarter beginning January 1, 1895, and ending March 31, 1895, and the balance due of the preceding quarter. The amount claimed was $13,527.56.

The declaration contained the common counts only. The city set up two grounds on defense.

1st. Non-compliance with the conditions and stipulations of the contract which had been entered into between the water company and the city, and under which the water was furnished.

2d. That at the time of contracting the alleged indebtedness, the indebtedness of the city already exceeded five per cent of the assessed valuation of the taxable property located in the city.

The last named is the principal defense, and as it is, under our view of the case, entirely decisive, we shall not in this opinion consider the first named.

Upon a trial without a jury the court found for the city.

In 1889, the city of Peoria owned and operated a system of water works which were insufficient for the wants of the city, and unsatisfactory to its people. The indebtedness of the city was such that it could not reconstruct the plant or increase its capacity. Accordingly an ordinance was passed whereby the water works were sold to Moffett, Hodgkins & Clark, of Watertown, N. Y., and a franchise granted to them to reconstruct and extend the works and operate them for a period of thirty years. The ordinance is a very lengthy one and contains many provisions and conditions regulating the mode of reconstruction, the increasing of the plant's capacity, the new source of supply, the assumption of the bonded indebtedness issued to construct the old plant, the use of water by the citizens and the rates to be charged them as rental.

As we shall concern ourselves only with the defense that the city was indebted to the extent of the constitutional limit when the contract was entered into, it is unnecessary to speak of any other provisions of the ordinance than those which bear directly upon the defense.

There were outstanding at the time $450,000 in interest-bearing bonds issued by the city in the construction of the old works, and which would fall due by installments, the last as late as June 1, 1908.   In consideration of the conveyance of the old plant to them, Moffett, Hodgkins & Clark assumed the payment of those bonds and a bond was executed in the sum of $200,000 to secure the performance of that part of their contract.

It was also provided by the ordinance that in consideration of the property and the franchise granted, the firm should, during the continuance of the contract, upon the request of the city furnish water for fire protection and for other public uses for the sum of $41,600 per annum, payable in four equal quarterly installments, and to receive in payment of said $41,600, such interest coupons upon the old water works bonds as the city should thereafter pay.

The plant was reconstructed as contemplated by the ordinance; the Peoria Water Company was organized and by assignment took all the rights, privileges and franchises of Moffett, Hodgkins & Clark and accepted them subject to all the conditions imposed by the ordinance.   The water company has continued to operate the plant, has furnished water to the city at the stipulated rental, and the rental has been paid without question up to the time when the claim sued for fell due.   There is now no question as to the furnishing of the water for the period covered by the claim.

It was stipulated upon the trial that the bonded indebtedness of the city on December 31, 1888, was as follows:

Water works bonds...................$450,000
Other bonded indebtedness.............. 219,500

Making a total of....................$669,500

It was further stipulated that the Peoria Water Company at the time of the commencement of this suit had paid $155,000 of the old bonds under the requirement contained in the ordinance and that the remaining $295,000 are outstanding and unpaid.

It was also stipulated that the indebtedness of the city,

aside from the outstanding water bonds amounting to $295,000 was at the time of the commencement of the quarter covered by the claims now in suit $219,500. This made a total outstanding indebtedness against the city of $514,500, if the unpaid water bonds are to be regarded as a debt of the city.

For the purpose of showing the assessed valuation of the taxable property in the city for the year 1888, that being the last assessment prior to the passage of the ordinance above mentioned, the city, over the objection of appellant, introduced a certified copy of what purports to be a summary of the assessment and taxes on property in the township of Peoria for that year, and also a copy of the rates of tax, from which an estimate was made, showing that the equalized value of all taxable property in the city for that year was $5,757,922.06.

It was stipulated that the assessed valuation of the taxable property in the city, as equalized by the State Board of Equalization for the year 1894, was $7,242,170.

It is urged that the evidence by which the assessed valuation of the taxable property for 1888 was shown, was incompetent, because not the best evidence. We do not regard the objection as of much importance, for the reason that the assessed valuation for 1894, and the city's outstanding indebtedness at that time must govern us in the application of the inhibiting constitutional provision invoked as a defense. We are led to this by the construction which we place upon that part of the ordinance which provides for the furnishing of water to the city at an annual rental of $41,600. Were we to give it that construction which would make the contract to receive water a continuous one from the completion of the plant to the end of the thirty years, then undoubtedly the indebtedness of the city and the assessed valuation of the property in 1888 would govern. We do not place upon it such a construction, however, but hold that the provision amounts to a contract for such time as the city may request water to be furnished at the rate specified. The language employed is: " In consideration of the

property, privileges and franchises by this contract granted and conveyed to the grantees, they hereby agree and bind themselves during the continuance of this contract, upon the request of the said city of Peoria, to furnish water for fire protection and for other public uses, as herein provided, for the sum of $41,600 per annum." It also provided, in another part of the ordinance, that under no circumstances should the grantees refuse to furnish water when requested by the city.

We think a fair construction requires us to hold that the city did not obligate itself to take water continuously, but was left the option of deciding for what years it would take it, and that when it elected to take it, did so for a year only, at a rental of $41,600, payable quarterly. We are led to believe, from a consideration of the entire ordinance, the circumstances which prompted its passage, and the existing indebtedness of the city in 1889, that the ordinance was so framed as to make the taking of the water optional with the city.

The constitutional provision invoked as a defense, reads: "No county, city, township, school district, or other municipal corporation, shall be allowed to become indebted in any manner, or for any purpose, to an amount, including existing indebtedness, in the aggregate exceeding five per centum on the value of the taxable property therein, to be ascertained by the last assessment for State and county taxes previous to the incurring of such indebtedness."

The assessed valuation of all taxable property in the city of Peoria for the year 1894, being the last assessment before the alleged rental indebtedness was contracted, was $7,242,170. Five per cent of that sum is $362,108.50, and the limit to which the city could contract indebtedness. The existing indebtedness at the time was $514,500 far in excess of the limit. The city was powerless to contract for an additional indebtedness of $41,600.

It matters not that it was providing for a necessary protection to health and property and a current expense. The city could not override the constitutional barrier under the

claim of meeting current expenses any more than it could create a debt payable in the future. City of Springfield v. Edwards, 84 Ill. 626; Prince v. City of Quincy, 105 Ill. 138; S. C., 128 Ill. 443.

It is insisted that the agreement to pay $41,600 did not increase the indebtedness of the city and that the unpaid water bonds should not be taken into consideration in determining the indebtedness of the city. The assumption of the debt by the water company and its promise to pay did not extinguish the debt as a liability against the city. That could only be accomplished by the holders of the bonds accepting the promise of the water company to pay, and agreeing to release the city. The city remains liable still, and may have the bonds to pay.

To adopt the theory of appellant would only serve to point out the way for extravagant and improvident city officials to saddle upon their municipalities tax burdens without limit and thereby thwart the very purpose of this constitutional provision.

In the construction we have placed upon the ordinance and the contract the agreement to pay the $41,600 water rental did increase the indebtedness. At the time, 1894, the indebtedness of the city consisted of $295,000 in water bonds and $219,500 in other indebtedness, a total of $514,500. By electing to call on the water company to furnish water for one year and agreeing to pay the fixed rate, the city thereby incurred an additional liability. True, it was provided that part payment of the rental could be made in interest coupons, but that is no reason why the agreement should not be considered as an obligation which increased the city's indebtedness. The whole of it could not be paid in that way, because not a sufficient number of the coupons would mature within the year to equal $41,600.

The Circuit Court was right in holding that the constitutional inhibition barred a recovery. Judgment affirmed.